JUDGE McMAHON

12 CIV 4779

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

ZOE WEST                                    )

                 Plaintiff,    )      Civil Action No.

    -against-                                )      **COMPLAINT**

THE CITY OF NEW YORK,                        )      **JURY TRIAL DEMANDED**
NYPD SERGEANT ANTHONY FUSARO, and
POLICE OFFICERS JOHN DOE 1 - 3.              )      ECF Case

               Defendants.    )

-------------------------------------------------------------x

RECEIVED
JUN 19 2012
U.S.D.C. S.D. N.Y.
CASHIERS

        Plaintiff ZOE WEST, by her attorneys, the Law Office of Ronald L. Kuby, hereby brings

this action under 42 U.S.C. § 1983 to redress her civil and legal rights, and alleges as follows:

### INTRODUCTION

        1.     This is a civil rights action in which the plaintiff, ZOE WEST, seeks relief for the

defendants' violations of her rights secured by 42 U.S.C. § 1983, and the Fourth and Fourteenth

Amendments to the United States Constitution.

        2.     This case arises from an August 30, 2011 incident in which members of the New

York City Police Department ("NYPD") falsely arrested Plaintiff as artist Andy Golub applied

paint to her nude body as part of an exhibition in Times Square.

        3.     Andy Golub is a street artist who uses the nude body as a human canvas, painting

his models in public spaces to allow his audience to observe the transformation.  His work has

been well received by art critics and the media.  San Francisco Weekly described Golub's body-

paintings as "stunning," and recognized, "Doing this in public is part of Golub's process.

...Painting people in public lets anyone watch the joint creation being made, and it's a more direct way to show his work than, say, photographs in a gallery." Keith Bowers, *Public Nudity: It's Different in New York City (Sort of)*, San Francisco Weekly, Sep. 20, 2011.

4.    "Praising Golub's artistic exhibitions, Nathan Burstein, writing for the New York Post, writes that Golub has given "new meaning to the term 'painting nudes,' using his brushes not to depict naked women on a canvas – but painting his vision directly onto their skin."  He elaborates:

> To create his unique style, [Golub] typically uses bright colors, beginning by applying a quick coat of paint, then tracing over it in contrasting shades.  Spectators sometimes liken the final product to the creatures from "Avatar," though Golub's designs are much more ornate.

Nathan Burstein, *Lewd Awakening*, New York Post, August 8, 2011.

5.    Use of the human body as his medium provides Golub with unparalleled inspiration.  As Golub told the New York Post, "[P]ainting people … [is] a lot more than painting the form – each person has a personality or energy that you can incorporate into the art." Id.

6.    As to the public nudity aspect of his work, Golub describes his exhibitions as an "interaction" with the public that "makes [people] look at things differently." Id.  "[I]t's allowing people to see nudity in a nonsexual way."  "It's about not being ashamed of the body."  He explains:

> It's a way for [the models] to accept themselves for who they are in their strengths and weaknesses and being comfortable in sharing that with other people, which is difficult. Most or all of the people that get painted have somewhat of a liberating experience … Me and the model connect with each other and we do it in full public view so people can connect with us.  In a lot of people's lives there's a certain disconnect that is the result of

technology and the way we communicate. . . Ultimately I believe my art is about human connection.

Felicity Jones, *My interview with Andy Golub: Artistic Nude or Downright Lewd?*, Young Naturists America website, May 1, 2012, available at http://nudistnaturistamerica.org/andy-golub-nude-body-painting-artist-interview.

7.     To Golub, full nudity (as opposed to toplessness) is crucial to convey his artistic message.  Nevertheless, the amount of time Golub's models are fully-nude during his public exhibitions is extremely short.  When doing a full-nudity exhibition, Golub's models typically remove their underwear last, simply to allow Golub to complete the painting.  The rapidly-applied paint covers the exposed area in minutes, if not seconds, and, once masked in a blanket of paint, the genital area is no longer discernible.

8.     Golub's art has received international recognition, but the artist is most famous for his live body-paintings on New York City streets.  He has painted models in front of numerous city landmarks, including Columbus Circle, the Brooklyn Bridge, Tompkins Square Park; the Metropolitan Museum of Art, and the New York Public Library; outside the tents of Fashion Week; at the 2006 Art Expo; and, more than a dozen times, in Times Square.  His painted models have also made annual appearances at several New York City parades.

9.     Recently, Defendant CITY OF NEW YORK, acting through its police department, has attempted to censor Andy Golub.  On July 30, 2011, members of the NYPD arrested Golub and two of his nude models during an exhibition in Times Square.

10.     Despite an agreement subsequently reached between Golub's attorney and the NYPD, police officers disrupted Golub's exhibition again on August 30, 2011. On that date, Golub was not arrested, but his model, Plaintiff Zoe West, was.

11.     In the City of New York, the law does not criminalize public nudity when engaged in for purposes of an exhibition or art. New York Penal Law §§ 245.01 and 245.02, which criminalize public nudity, generally, specifically exempt from criminal liability persons "entertaining or performing in a play, exhibition, show, or entertainment." The New York State Legislature has granted local authorities the right to pass local laws to further restrict public nudity, but the City of New York has passed no such laws. Indeed, the City of New York regularly authorizes film companies to engage in nude film shoots in public spaces in the City. Hence, Plaintiff was arrested for a crime that does not exist.

12.     In this action, alleging false arrest and deprivation of her constitutional rights, Plaintiff seeks compensatory and punitive damages, an award of costs, interest and attorney's fees, and such other and further relief as this Court deems just and proper.

## JURISDICTION AND VENUE

13.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343, this being an action seeking redress for the violation of the Plaintiff's constitutional and civil rights.

14.     Venue in this District is proper under 28 U.S.C. § 1391(b) and (c) in that Defendant CITY OF NEW YORK is administratively located within the Southern District of

New York, and the events giving rise to this claim occurred within the boundaries of the

Southern District of New York.

## JURY TRIAL DEMANDED

15.    Plaintiff demands a trial by jury on each and every one of their claims as pleaded

herein.

## PARTIES

16.    Plaintiff ZOE WEST is and was at all times relevant herein a citizen of the United

States and a resident of Brooklyn, New York.

17.    Defendant CITY OF NEW YORK is and was at all times relevant a municipal

entity created and authorized under the laws of the State of New York.  It is authorized by law

to maintain a police department which acts as its agent in the area of law enforcement and for

which it is ultimately responsible.  Defendant CITY OF NEW YORK assumes the risks

incidental to the maintenance of a police force and the employment of police officers.

Defendant CITY OF NEW YORK was at all times relevant herein the public employer of the

individual defendants.

18.    Defendants SGT. FUSARO and JOHN DOES 1-3 (collectively, "the individual

defendants") are and were at all times relevant herein duly appointed and acting officers,

servants, employees and agents of the New York City Police Department, a municipal agency of

THE CITY OF NEW YORK.  At all times relevant herein they were acting in their capacity as a

New York City police officer, and were operating under color of the laws, statutes, ordinances,

regulations, policies, customs, and usages of the State of New York and the New York City

5

Police Department, a municipal agency of Defendant CITY OF NEW YORK. They are sued individually and in their official capacity.

19.     At all times relevant, the individual defendants violated clearly established constitutional standards under the Fourth and Fourteenth Amendments to the United States Constitution of which a reasonable police officer under the circumstances would have known.

## STATEMENT OF FACTS

20.     On August 30, 2011, in the Times Square pedestrian plaza near 44th Street and Broadway, at around 4:00 p.m., NYPD Sergeant FUSARO ordered the arrest of Plaintiff Zoe West.

21.     Ms. West had arrived at the above location at around 2:00 p.m. to prepare for an exhibition in which she would model for street artist Andy Golub, who would paint her nude body in the heart of Times Square.

22.     Photographers and reporters arrived at the scene to interview Golub and his model, and to capture the artistic process on video and/or film.

23.     While answering the questions of reporters and the crowd of onlookers that had formed around them, Mr. Golub and Ms. West began their exhibition.

24.     Ms. West disrobed, removing all clothing except her black thong underwear. Golub immediately began painting the topless model. With big, colorful strokes of his paint brush, Golub quickly clothed Ms. West in a vibrant layer of paint, transforming the once-bare body into a dramatic display of colors, shapes, and lines that added new life to his already-living medium.

6

25.    After her exposed skin was fully coated with paint, Ms. West removed her thong to allow Golub to complete his artistic creation. Again, Golub's quick, large strokes covered the naked area in minutes, if not seconds.

26.    At around 4:30 p.m., Golub had nearly completed the body-painting when NYPD Sergeant FUSARO approached him and Ms. West. Less than a minute later, Police Officers DOES 1-3 moved in on Ms. West.

27.    Visibly unnerved by Ms. West's removal of her panties, Sgt. FUSARO told Ms. West he had to "bring her in."

28.    Ms. West was cooperative, and stood quietly as Andy Golub explained to Sgt. FUSARO that Ms. West's exposure was not illegal and that an agreement had been reached between Golub's lawyer and the NYPD that Golub's models would not be arrested for removing their clothing during such exhibitions.

29.    Despite that agreement, and the validity of Golub's argument, Sgt. FUSARO ordered that Ms. West be arrested. The arrest, and the discussion that preceded it, was captured on video. A copy of the video is provided as Exhibit A on the disc of exhibits enclosed herewith. Photographs depicting the artistic expression of Plaintiff's paint-bodysuit, and the Defendant officers involved in her arrest, are annexed hereto as Exhibits B through F.

30.    DOE 1 grabbed the cup of coffee from Plaintiff's hands, and DOE 2 grasped Ms. West's wrists from behind and bound them with metal cuffs. DOE 3 was standing less than a foot away, but did nothing to stop the arrest.

31.    One of the officers retrieved Ms. West's clothing, but she was not given an opportunity to cover-up. Photographers and onlookers snapped her picture as Ms. West, clad

7

only in colorful paint and metallic cuffs, was escorted through Times Square and into a police

vehicle by DOES 1-3.

32.     She was transported to the Midtown South precinct, where she forced to stand in

front of a desk in the lobby of the precinct, still unclothed, for approximately fifteen minutes.

Several officers gawked at her as she stood there, humiliated.

33.     At some point a female police officer returned Ms. West's clothing and brought

her to a room where she was permitted to dress.  As soon as Ms. West was dressed, the female

officer searched her, patting her down.

34.     Ms. West had been at the precinct for approximately two hours when Sgt.

FUSARO came into the juvenile delinquents' room, where Ms. West was being held, and told

her she was free to leave.  Without an apology or an explanation, FUSARO removed the

handcuffs from Ms. West and she was released.  No charges were filed against her.

35.     Ms. West has never committed a crime, and prior to August 30, 2011, Ms. West

had never been arrested.

## CAUSES OF ACTION

### FIRST CLAIM:  FALSE ARREST

### DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. §1983

36.     Plaintiff incorporates by reference the allegations set forth in each and every

preceding paragraph as if fully set forth herein.

37.     The conduct and actions of Defendants FUSARO and DOES 1-3 on August 30,

2011, acting under color of law, in arresting and detaining or causing the arrest and detention of

Zoe West without probable cause, was done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of their acts, and was done without lawful justification or reason, in violation of Plaintiff's Constitutional rights as guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution.

38.     FUSARO and DOES 1-3 are liable for ordering and/or directly participating in the acts described herein and for failing to intervene to protect Zoe West from the illegal conduct of their fellow officers.

39.     As a direct and proximate result of the foregoing, Ms. West was deprived of her liberty, was subject to great humiliation, and was otherwise damaged and injured.

## SECOND CLAIM:  MUNICIPAL LIABILITY

### LIABILITY OF DEFENDANT CITY OF NEW YORK
### FOR CONSTITUTIONAL VIOLATIONS

40.     Plaintiff incorporates by reference the allegations set forth in each and every preceding paragraph as if fully set forth herein.

41.     The CITY OF NEW YORK directly caused the constitutional violations suffered by Plaintiff, and is liable for the damages suffered by Plaintiff as a result of the conduct of the defendant officers.  The conduct of the defendant officers was a direct consequence of policies and practices of Defendant CITY OF NEW YORK.

42.     Upon information and belief, at all times relevant to this complaint Defendant CITY OF NEW YORK, acting through its police department, had *de facto* policies, practices, customs and usages that condoned and fostered the unconstitutional conduct of the individual defendants,

9

and were a direct and proximate cause of the damages and injuries complained of herein.

43.    These policies, practices, customs, and usages include, *inter alia*, failing to properly train, supervise and discipline its police officers, including the defendant officers, and failing to adequately investigate citizen complaints of police misconduct, thereby failing to adequately discourage further constitutional violations on the part of its police officers. Instead, acts of police misconduct were tolerated by the CITY OF NEW YORK, and the City did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct.

44.    At all times relevant herein, Defendant CITY OF NEW YORK, acting through the NYPD, had *de facto* policies, practices, customs and usages of encouraging and/or tacitly sanctioning the violation of and/or retaliation for an individual's exercise of free expression.

45.    More specifically, the CITY OF NEW YORK, acting through the NYPD, had a policy and practice of failing to properly train its employees and police officers as to the lawfulness of public exposure engaged in as part of a performance, play or exhibition, thereby allowing the arrest and detention of persons whose conduct was expressly excluded from the statutory prohibition against public nudity.

46.    The CITY OF NEW YORK knew or should have known of the defendant officers' propensity to engage in misconduct of the type alleged herein. Prior to August 30, 2011, the CITY OF NEW YORK was aware of numerous complaints of police misconduct involving the false arrest of individuals who engage in public exposure for purposes of an exhibition or art by members of the NYPD. Despite its knowledge of such incidents of prior misconduct, the CITY OF NEW YORK failed to take remedial action.

47.    The wrongful policies, practices, customs and/or usages complained of herein,

demonstrated a deliberate indifference on the part of policymakers of the CITY OF NEW YORK to

the constitutional rights of persons within the city, and were the direct and proximate cause of the

violations of Plaintiff's rights alleged herein.

48.     As a result of the foregoing, Plaintiff was deprived of her liberty, subject to great

humiliation, and was otherwise damaged and injured.

**WHEREFORE**, Plaintiff demands the following relief jointly and severally against all of the

Defendants:

a.     Compensatory damages in the amount to be determined by a jury;

b.     Punitive damages in an amount to be determined by a jury;

c.     The convening and empanelling of a jury to consider the merits of the claims herein;

d.     Costs and interest and attorney's fees;

e.     Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
      June 11, 2012

LEA SPIESS, Esq. [LS-7866]
RONALD L. KUBY, Esq. [RK-1879]
Law Office of Ronald L. Kuby
119 West 23rd Street, Suite 900
New York, New York  10011
Email:  LSpiess@kubylaw.com
(212) 529-0223 (t)
(212) 529-0644 (f)

Attorneys for Plaintiff

# Exhibit B



# Exhibit C



# Exhibit D



# Exhibit E



# Exhibit F

